Dave Lovett v. The State of Florida.—Syllabus.

1. It is indispensable to a legal conviction of a defendant on trial for murder that he should be personally present in court during the trial, and is likewise indispensable that the record

Dave Lovett v. The State of Florida.—Syllabus.

proper of the trial, as distinguished from the bill of exceptions, shall show such personal presence. Presence by an attorney is not sufficient, nor is it sufficient that a bill of exceptions shows presence in person, where the record proper does not show personal presence.

2. Personal presence at the time of the trial can not be inferred from the express statement in the record proper of such presence at the time of the sentence, where the expression of the record as to the trial is that the defendant's presence on the trial was by his attorney.

3. It is not the purpose or office of bills of exception to provide a new and optional or substitutional mode of making a record, or other legal evidence, of such steps or proceedings in a cause as, at the time of the institution of these bills, were set forth in and shown by the ordinary record. These bills are records of proceedings in the trial court which do not appear in its ordinary record, and they are made, not as a basis of any further proceeding in that court, but for the purpose of reviewing in the appellate court rulings of the former court excepted to as erroneous in law.

4. Where the record proper of a trial for murder does not show an arraignment of the prisoner, or otherwise show his personal presence in court prior to his being sentenced, but shows that at the trial he " came " by his attorney, and then shows that at the time of being sentenced he came again in his own proper person and attended by his counsel, it is not sufficient evidence of, and will not support a conviction of murder ; and the deficiency is not supplied, or the defect cured, by the bill of exceptions showing that he was present at the trial in person and by attorney.

5. That a record entry to the effect that the jury " were duly elected, tried and sworn the truth tó speak on the issue joined," does not purport to set out the oath as it was actually administered, but only to show that the jury were in fact sworn properly, and is a sufficient entry, is settled law in Florida.

6. It is not proper, under our statute, for the sentence in a capital case to state the place of execution. Whether or not it is ground even for remanding the cause for a new sentence not decided. It is not ground for a new trial.

7. The words : " It is therefore considered by the court," in the sentence in a criminal cause, are the approved formal expression and judgment of the court pronouncing the sentence of the law, and are not a mere recital by the clerk of what the court did.

Writ of Error to the Circuit Court for Duval county.

## STATEMENT.

The plaintiff in error was indicted at the Fall term, A. D. 1891, of Duval Circuit Court, for the murder of March Scroggins. The indictment appears to have been presented by the grand jury in open court, November 20th, 1891, and, as the transcript of the record reads, exclusive of the bill of exceptions : "Afterwards, to-wit : On the tenth day of December, one thousand eight hundred and ninety-one, at a term of the Circuit Court of the 4th Judicial Circuit, in and for the county aforesaid, held at the city of Jacksonville, came the said plaintiff and the said defendant, by their respective attorneys, and thereupon came a jury, to-wit:" (giving their names) "who being duly elected, tried and sworn the truth to speak upon the issues joined, having heard the evidence, the charge of the court and the argument of counsel, and having considered of their verdict, upon their oaths do say "

(giving the verdict, which is one of guilty, as charged in the indictment). The transcript then states that, "upon the rendition of which said verdict the defendant by his attorney entered a motion in arrest of judgment, in the words and figures following." This is followed immediately by a motion for a new trial dated December 11th, 1891, which, after giving the title of the cause, reads: "Comes now the defendant by his attorneys," giving their names, "and moves the court to grant him a new trial on the following grounds," which are set out. This motion was "overruled and denied," the defendant excepting, and upon the same day, December 14th, 1891, it is stated by the record, "Comes again the said defendant in his own proper person, and attended by his counsel, and the defendant being asked what he had to say, why sentence of the law should not be pronounced upon him, saying nothing sufficient, it is therefore considered by the court that the said Dave Lovett be remanded to prison, there to remain until such day as the Governor of the State of Florida shall by his warrant appoint, and on the day, and at the time appointed, that he be taken by the sheriff of this county to the place of execution within the enclosure of the jail of Duval county, and then and there be hung by the neck until he be dead."

It is claimed in behalf of the plaintiff in error that this record does not show that the prisoner was present in his own proper person on the trial of the cause, or in fact at any time before the sentence, and that this

defect in the record proper necessitates a reversal, notwithstanding the showing made by the bill of exceptions of the prisoner's personal presence.

This alleged defect in the record proper, the Attorney-General urges, is cured by the bill of exceptions which shows that on the tenth day of December, 1891, the cause came on to be heard in said court, and thereupon "came the said parties in person, and by their respective attorneys, and thereupon the issue joined between the said parties came on to be tried, and the jurors of the jury aforesaid, whereof mention is within made, being called, likewise came, and were sworn to try the said issue in manner aforesaid joined," the bill showing the examination of witnesses of the State and of the defendant, and the statement of the defendant in his own behalf, and the charges of the judge to the jury, and the rendition of the verdict on the same day, and then, that "the said defendant by his attorneys on the 11th day of December, A. D. 1891, at the term of court aforesaid, did enter in writing and submit to the said court his motion that a new trial be granted for reasons following," setting out the motion, and shows a refusal of the same, and that the defendant by his attorneys excepted to such ruling ; the bill of exceptions being duly signed and sealed by the Circuit Judge.

The other facts in the case are stated in the opinion of the court.

*Robert S. Cockrell* for Plaintiff in Error.

1. Bills of exceptions were unknown to the common law, and the matters presented to the revising court for review were only such matters as regularly belonged to the record.

*Now* the defendant, not the State, may by a bill of exceptions, incorporate into the record, matters occurring at the trial, which otherwise would have remained *in pais*, and only such matters. Regina vs. Allyne, 29 Eng. Law & Eq., 179; 2 Bacon's Abridg., Bill of Except., 211-214; Ned v. State, 7 Port., 187; Bacome vs. State, 8 Port., 458.

A bill of exceptions is not the proper medium through which to certify to the appellate court matters which must necessarily be a part of the record as it stands in the case unaided by a bill of exceptions, nor will the Supreme Court consider such matters if incorporated solely in the bill of exceptions. New Orleans, etc., v. Allbritton, 38 Miss., 242; 3 Brickell's Dig., p. 78, sec. 7.

Nor can the rules of court prescribing a cast iron form for a bill of exceptions, nor can the court below by refusing to sign another than such a form, require defendant to incorporate therein in aid of judgment entry already completed, a fact or recital which, if true should appear and which can properly appear only in the record entries made up by the court or the clerk under its directions.

Tested by these principles, the *judgment entry* must

show affirmatively that the prisoner was present *in person* at every stage throughout the trial, whereas the judgment entry (page 5 of the record) shows that prisoner was present *by counsel* only. Sylvester vs. State, 71 Ala., 17; Gladden vs. State, 12 Fla., 562.

2. Our statute prescribes the following oath to be administered to jurors in *capital cases:* "You shall well and truly try and true deliverance make between the State of Florida and the prisoner at the bar whom you shall have in charge, according to the evidence. So help you God." McClellan's Digest, p. 447, sec. 12.

While in cases not capital, a different oath is prescribed : "You shall well and truly try the issue between the State of Florida and the defendant, according to the evidence. So help you God." McClellan's Digest, p. 447, sec. 12.

The statute thus takes care to discriminate in *favorem vitae* between cases capital and cases not capital, and it is imperative that this plaintiff in error should have had the benefit of that differentiation. The statute seeks to impress upon each juror greater solemnity in the form and substance of the oath prescribed in capital cases, because of the swift and irremediable consequences which may result from an unjust verdict. And while I may admit for the purposes of this argument, it is permissible, even in capital cases, to recite the effect of the oath, as that the jury was duly sworn, or that the oath prescribed by law was taken, or that

the jury was sworn according to law, when it is not attempted to set out the oath administered, yet it certainly must appear affirmatively in some satisfactory, form, in the judgment entries that the oath *required by the statute* was administered.  Lacy vs. State, 58 Ala., 385 ; Story vs. State, 71 Ala., 5.

I insist the judgment entries do not so affirmatively show.

3. Now what does the judgment entry show in the case at bar ?  It does not attempt to show that the oath was by a simple recital of its legal effect, but the oath itself is set forth in *totidem verbis*.  The jury was sworn "the truth to speak upon the issue joined." See page 5 of the record.

The Alabama statute prescribes the following oath to petit juries :  "You do solemnly swear that you will well and truly try all issues and execute all writs of inquiry, which may be submitted to you during the present term and true verdicts render according to the evidence. So help you God." Code of Alabama (1877), sec. 4767.

The Supreme Court of Alabama passing on such oath say: "An oath administered to a petit jury in a criminal case to ' well and truly the issue joined to try and a true verdict to render' is insufficient in that it fails to require the jury to render their verdict according to the evidence ; and it will not sustain a judgment of conviction on appeal."  5 Brick. Dig., p. 266, sec. 199,

citing Allen vs. State, 71 Ala., 5 ; Story vs. State, *Ibid*, 329 ; Schamberger vs. State, 68 Ala., 543 ; Walker vs. State, 72 Ala., 218 ; Peterson vs. State, 74 Ala., 34 ; Johnson vs. State, *Ibid*, 537.

"The truth to speak," is the obligation under oath, that a witness in a judicial proceeding, takes upon himself. It may be the form of oath, as actually administered was necessary or supposed to be necessary by the clerk who administered and transcribed it in the judgment entry, to preserve to the defendant his constitutional right of trial by a "jury of the vicinage," who according to -the ancient common law were expected and required the "truth to speak" from their superior knowledge of the circumstances of the homicide, in their *sub modo* relation of witnesses, as such jury of the vicinage, and so were not confined to the evidence produced at the trial alone.

Suppose the jury in this case, upon a careful balancing of the testimony pro and con, was impressed with a belief that accused was guilty, was satisfied that the evidence preponderated in favor of the State, and yet was not satisfied beyond a reasonable doubt, the return of that jury under this oath, "the truth to speak" could not be "we speak the truth and say defendant is not guilty."

The jury was thus bound to speak the truth, whereas accused had opportunity for defense only as to such evidence as was actually produced at the trial.

4. The sentence pronounced upon the plaintiff in error was not the sentence of the law pronounced through the court, but the sentence of the court.

The judgment entry says: "It is therefore considered by the court that the said Dave Lovett be remanded," etc. Now to sustain a sentence the record must show affirmatively that it was the act of the court, pronouncing the sentence and judgment of the law; and in the case of Gray vs. State, 55 Ala., 86, a recital in these words: "The defendant being asked by the court if he had anything to say why the sentence of the law should not be pronounced upon him, said nothing; whereupon *the court* sentenced the defendant to be hanged by the neck until he is dead," is not sufficient. 3 Brickell's Dig., p. 371, sec. 302.

5. It is not the duty of the court to fix the time or *place* of the execution. The Governor, under the statute, is to fix the time, and his warrant should issue to and direct that it be executed by the sheriff of the county where *the prisoner may, at the time of its issue, be confined,* within the walls or inclosure of the jail or prison of such county. Chief Justice Randall in the case of Savage and James vs. State, 18 Fla., 909-966. And so in Florida the rule is expressly settled. Hence court erred in fixing the jail of Duval county as the *place* of execution. See page 8 of the record.

As to charge 1—

The statute requires the court, when it undertakes to instruct, to charge as to *all* the grades of homicide, which the evidence in the case may reasonably support, as well as the exceptions to each grade. Gladden vs. State, 12 Fla., 562.

As to charge 2—

Though the law does not prescribe what length of time should elapse between the formation of the design to kill and its execution, to constitute premeditation, yet there must be a *fully* formed purpose to kill with enough time for thought, to convince the jury that the prisoner had become *fully* conscious of the purpose to be consummated. Carter vs. State, 22 Fla., 553.

As to charge 3—

An act to be malicious must not only be done on purpose and with evil intent, as at common law, but under our statute, as an ingredient of murder, it must be done unlawfully and with *homicidal* intent, and *without just cause or excuse.* 12 Fla., 117.

To illustrate the distinction between common law and statutory murder (and in this state we have only the latter, see Denham vs. State, 22 Fla., 664), suppose one shoots at another's chickens *in sport* and kills a man, it was and is excusable homicide, but if he shoots at another's chicken with intent to steal and kills a man, it was at common law murder. Here we have an act " done on purpose and with evil intent," but such

an act does not constitute "malice" under the purview of our statute as to homicide. 1 Hawk. P. C., Ch. 13, sec. 47.

Hence we say that a charge on a trial for murder that "an act is maliciously done, when it is done on purpose and with evil intent" is erroneous.

As to charge 4—

It contains the words "reasonable doubt," and this reasonable doubt is defined erroneously in charge 5, in the light of which error the jury must be presumed to have been controlled.

As to charge 5—

"The judgment of reasonable men in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of criminal cases, involving life or liberty, something further is required. There must be more than a preponderance of evidence. There must be in the minds of the jury *an abiding conviction to a moral certainty of the truth of the charge*, derived from a comparison and consideration of the evidence. They must be entirely satisfied of the guilt of the accused, and so a charge that reasonable doubt was such a " doubt as would induce a man of reasonable firmness to act upon in matters of importance to himself"—error. People vs. Ah Sing, 51

Cal., 351, cited in and affirmed in People vs. Bennerly, 25 Pac., (Cal.) 266, and People vs. Walidfrom, 26 Pac., (Cal.) 236.

The Supreme Court of Florida in Earnest vs. State, 20 Fla., 383, use the identical words of the California court, "an abiding conviction to a moral certainty of the truth of the charge," quoting from State vs. VanWinkle, 6 Nev., 340.

"In criminal cases a greater degree of mental conviction is required than in civil cases is held to be necessary." 29 Fed. Rep., 503.

"An instruction that the proof is deemed sufficient when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act in an important affair of their own," does not correctly state the law of reasonable doubt. People vs. Terry, 24 Pac. Rep., 33 ; s. c. 84 Cal., 31.

"You will act as a prudent careful business man would act in determining an important matter pertaining to his own affairs." Held error for which a verdict for murder must be set aside. Territory vs. Bannigan, 46 N. W. Rep., 597 ; s. c. 1 Dak., 451.

The definition of "reasonable doubt" given in Indiana in the case of Bradley vs. State, 31 Ind., 492, contains a qualification which seems all-important. "The jury must be so convinced by the evidence of defendant's guilt that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal inter-

ests, *under circumstances where there was no conclu-sion upon him to act at all.*"

If, for instance, one standing on some vantage ground, sees a conflagration, and is unable to deter-mine whether it be his own dwelling which is on fire or that of a personal enemy, or perhaps a mere brush heap, he will act upon his doubt, in this matter of the highest moment to himself, and rush to the fire ; but surely this is not such a *doubt* as should lead a jury to convict one of a capital offense.

And yet all the elements of that "reasonable doubt," defined in charge 5, are present, and this plaintiff in error was prejudiced by such a charge.

Cases and examples might be readily multiplied, showing the error of this charge, but it is thought that the above will suffice.

As to charge 7—

If a ground for a reasonable belief existed, it was immaterial whether defendant believed it or not ; and the attention of the jury should have been directed to the existence or non-existence of such ground and not to the conviction of defendant's mind, except as a re-sult from the presence or absence of such ground.

As to charge 8—

Even at common law, where slayer did not begin the fight, *or having begun it, has endeavored to decline* it and has killed his adversary, it was chance medley and

24

excusable. 1 East P. C., 280; Fost., 276; Minor's Crim. Law, 44.

As to charge 9—

I submit that defendant had a right to go on deceased's premises to collect a debt and was not a trespasser. Court erred in charging that accused in the street in front of deceased's premises was a trespasser. Undoubtedly he had a right to be there. Certainly he was not a trespasser in the sense and consequences imputed to an aggressor pushing a fight on his adversary. Certainly he was not such a trespasser, in that being on the highway he used insulting words and invited his adversary to combat.

As to the last charge, not numbered, the court erred in not adding thereto that jury may recommend to executive clemency. McClellan's Digest, p. 448, sec. 18.

Again : The court erred in charging that "The law *gives* the jury the *right* to recommend," etc. The statute declares the jury "*may*" recommend, and where the statute directs the doing of a thing for the sake of justice, the word "*may*" is construed "*shall*," thus imposing a *duty*, to the performance of which, they were bound by their oath, and not a mere bare *right* or *privilege* so to recommend, if the circumstances of the case require or justified it. Mitchell vs. Duncan, 7 Fla., 15.

If the above propositions or any of them be correct, the court erred in overruling motion for a new trial.

*The Attorney-General* for Defendant in Error.

RANEY, C. J.:

That it was necessary for the defendant, who was on trial for murder in the first degree, and was convicted of it, to be personally present during the trial and preceding the sentence, as well as when sentenced, is of course not denied; Holton vs. State, 2 Fla., 476, 500; Gladden vs. State, 12 Fla., 562, 577; Irwin vs. State, 19 Fla., 872, 891; Sneed vs. State, 5 Ark., 431; and that it is necessary that the record should show his personal presence is equally unquestionable. 1 Chitty's Cr. Law, 337, 411, 414; Bishop's Cr. Pro., sec. 1180; sec. 11, Bill of Rights Constitution 1885. It is by this record, as it stands in the trial court, that the appellate court must decide whether there has been a lawful trial and conviction. Though it may be regarded as settled that where the personal presence of the accused is necessary in point of law, the record must show it, yet it does not seem necessary that there should be in the record an express statement of his presence at every stage of the cause to which such presence is essential. The decision in Irvin vs. State, *supra*, is that where the record shows that the prisoner was duly arraigned, was present at the trial and at the sentence, and no interval, or adjournment of the court, appears between the commencement of the trial, the verdict and the judgment, the presumption is that

he was in court during the whole time; and in Brown vs. State, 29 Fla.,——, 10 South, Rep.,——. it is said it is sufficient if the presence appear from the record by necessary and reasonable implication. In Jeffries vs. Commonwealth, 12 Allen., 145, 154, the record showed personal presence at the arraignment and at the sentence, and it was held that it was not necessary that it should state in direct terms that the prisoner was present at the rendition of the verdict and during all the previous proceedings of the trial, and although such presence was in fact essential. In a case in which the record stated that the prisoner came into court at the commencement of the trial, on March 7th, and was at the bar when the jurors were sworn, and then set forth that forasmuch as it appeared that justice could not be done if the court should proceed without interruption upon the trial, the same was continued by adjournment from day to day till the 26th of March, when the jury rendered their verdict, and also showed that when asked if he had anything to say why sentence should not be pronounced on him, he announced that he had nothing further "than as before he had said," the Court of Appeals of New York held it sufficient, as stating all that was necessary to warrant the inference that the prisoner was present during the entire sitting of the court from the calling of the jury to the rendition of the verdict. It is said in the opinion: "The allegations of a continuance of the trial sufficiently indicates that it was with the incidents before

described of which the presence of the prisoner was one. Besides, when facts are stated sufficient to confer jurisdiction upon a court of such high attributes, the inference is that as to its continued proceedings *omnia rite ecta.* Hence, it is not usual in either civil or criminal cases to state on the record the occurrence of the necessary incidents between the selection of the jury and the rendition of their verdict.'' Stephens vs. People, 19 N. Y., 549. See also Stephens vs. People, 4 Parker's Crim. Rep., 396; State vs. Langford, Busbee's Law Reports, 436; Rhodes vs. State, 23 Ind., 24. In Schrimer vs. People, 33 Ill., 276, where the personal presence of the the prisoner was shown by the arraignment, and no interval appeared between it, the trial, verdict and judgment, it was held that the presumption was that the prisoner remained in court the whole time, and the view entertained was, (like that in West vs. State, 22 N. J., Law, 212), that where the prisoner's presence can, by fair intendment, be collected from the record, it is sufficient. In State vs. Craton, 6 Iredell, 164, the doctrine announced is that it is sufficient if the prisoners presence is a necessary or a reasonable implication from the record. At a term following the indictment and arraignment, and committal of the prisoner to close custody, there was, as the record shows, an order by the court "that the prisoner, John P. Craton, be brought to the bar," and, immediately thereafter it shows that the jury were sworn and empanelled, and that they found "the

prisoner at the bar guilty," and thereupon there was
judgment "that the prisoner be taken back to the
prison, &c., from which judgment the prisoner prays
an appeal and gives bond, &c." The record was held
sufficient. It is held in State vs. Wood, 17 Iowa, 18,
that where it appears from the record that the pris-
oner was present at the commencement of the trial
and at the sentence, it will be presumed, in the ab·
sence of any affirmative showing to the contrary, that
he was present during the trial and at the rendition of
the verdict; and in Harriman vs. State, 2 G. Greene,
270, 284, it is said that even if the record after ar-
raignment remained perfectly silent on this point, we
could not by implication conclude that the judge neg-
lected his duty in this particular, but we should nat-
urally suppose, by legal intendment till the contrary
appears, that the court had performed its duty in all
those particulars and had extended to the accused his
constitutional and legal rights. In Sweeden vs. State,
19 Ark., 205, it was held that where it does not other-
wise appear. affirmatively on the record that the ac-
cused was present during the trial in the trial court,
the appellate court will infer his personal presence
from the order incorporated in the judgment of the
court, that he "be and remain in the custody of the
sheriff until the fine and costs are fully paid." We
cannot say that the reasoning of the last of these cases
impresses us as being satisfactory.

There are cases in which the law on this point has

not been so liberally applied in favor of the State, and among them are, Cole vs. State, 5 Eng., (Ark.), 318; State vs. Cross, 27 Mo., 332; Dunn vs. Commonwealth, 6 Penn. St., 384; Saggs vs. State, 16 Miss., (8 S. & M.), 722, but they need not be noticed, since the more liberal cases do not, in our judgment, establish the sufficiency of the record proper, or the transcript excluding the bill of exceptions, now before us. There is nothing to show that the accused was ever personally present in the court before he came there to be sentenced. There is no arraignment shown; nor does it appear that the issue which was "joined," was tendered by him in person. The only affirmative showing of the record as to his presence at the trial is, that he was there by his attorney. This does not show or imply or justify the inference that he came or was there in person; which the record must do affirmatively either expressly or by reasonable intendment. There is moreover, nothing in the record of the sentence that in any wise supplies the deficiencies or cures the defects of the record of the trial. It represents the defendant as coming again, and gives the manner of his coming, that it was "in his own proper person and attended by his counsel." These quoted words are descriptive of his second coming only, just as the words "by their respective attorneys" are descriptive of the coming of the State and prisoner at the trial. We can not presume against the prisoner by extending them to what they are not used as descriptive of

or in connection with. Nothing beyond what appears substantially upon the face of a record can be presumed for or against the record, in so far as those things which are essential to its validity as the legal evidence of a judicial proceeding. Dyson vs. State, 26 Miss., 362.

In the case of Sperry vs. Commonwealth, 9 Leigh, 623, the prisoner was arraigned in September, and the case was then continued to the next term of the court, and at such term, on the 27th day of April following, as shown by the record, "came as well the attorney for the commonwealth, as the prisoner by his attorney, and thereupon came a jury," etc., who having heard the evidence and the argument of counsel, retired to consider of their verdict, and not agreeing on it that day, were adjourned over till the next day, and on such day, April 28th, as the record states, "the venire empanelled upon the trial of this cause on yesterday again this day appeared in court and retired to consider of their verdict, and returned into court" with a verdict of guilty, and fixed the punishment, "whereupon the prisoner was remanded to jail." The decision of the court was that if it could be inferred from the circumstance of the prisoner's being remanded to jail, that he was personally present during the proceedings on the 28th of April, there was no such circumstance stated in the proceedings of the 27th; that the only statement in regard to the appearance of the prisoner on that day was that he appeared by his attorney, without any circumstance stated from which it

could necessarily be inferred that he was necessarily present. That an appearance by an attorney could not imply that the prisoner was personally present in court, and therefore the record was deficient in what the law regards as essential to be stated in such a cause. Hooker's Case, 13 Gratt., 763, 766, was one in which the record showed that on April 24th, when a motion for a new trial was made, and again on the 26th of the same month, when the motion was overruled and judgment rendered, the defendant appeared by attorney, there being nothing to show that he was personally present on either day ; and it was held that the record was insufficient. In Warrace vs. State, 27 Fla., 366 ; 8 South. Rep., 748, the record as to the prisoners' presence in court prior to their sentence was in effect that the cause came on to be heard on a stated day and was heard on that day, "Judge David S. Walker, presiding, on the bench, and E. C. Love, State's Attorney, N. R. Walker, for defendants ; their plea, not guilty," and it was held that there was nothing to show that the accused were arraigned, were personally present in court, or personally pleaded to the indictment. See also State vs. Matthews, 20 Mo., 55.

It is unnecessary to say what our conclusion would be if it appeared from the record that the prisoner had been formally arraigned, whereby his personal presence would be shown, and there was nothing further than what is now to be found in the record indicating his subsequent absence during the trial ; but, in the absence of such arraignment, or other affirmative showing that the prisoner was personally present in

court when he plead, we are entirely satisfied that it can not be said that the record proper, or as distinct from the bill of exceptions, shows affirmatively, either expressly or by reasonable intendment, or in substance, that he was personally present in court at any time prior to his being sentenced.

Satisfied that the record proper does not show affirmatively, even by reasonable intendment, the personal presence of the prisoner in court at the trial, or at any time prior to his being sentenced, it becomes necessary to decide whether or not the bill of exceptions can be invoked to supply or cure the deficiency. In the case of Brown vs. State, *supra*, decided at the present term of this court, it was held that the fact that a jury in a criminal cause was sworn, must be shown by the record proper, and that the absence of such a showing is not supplied by a statement in the bill of exceptions that they were sworn. The reason for this conclusion is, that it is not the office of a bill of exceptions to supply what it was previously necessary or usual to insert in the record proper. Bills of exception must owe their origin to the demands of justice, dictated by experience, that errors of law committed in the trial of causes in matters *in pais* or of oral procedure, as to which the record did not speak or was, in other words, entirely silent, should be the subject of appellate review. The purpose of their origin was not to create a new and optional mode of making a memorial of steps in a cause, which the record, as then made up, preserved ; on the contrary, it was to authorize the making of a memorial of what the record, as then

made up, did not preserve. The remedy for any error of law apparent in proceedings then proper to be shown by the record was ample, and was a writ of error, but as those records did not show the rulings of the judge upon the trial, however earnestly they may have been contested, and whatever may have been the degree of their error, a writ of error could not reach them, and hence a remedy was necessary, and this remedy was given by a bill of exceptions. The remedy given by the statute of Westminster the Second, 13 Ed. I, A. D. 1285, was where one of the parties "doth allege an exception," and the nature of the remedy was to require the judge to make, on the application of the party excepting, a record of the ruling, the exception and relevant matter, so that a writ of error could reach it, and then judgment was given in the appellate court "according to the same exception, as it ought to be allowed or disallowed." No exception was ever necessary to take advantage of an error apparent on the record proper. Jones, Varnum & Co. vs. Townsend, 21 Fla., 431, 438. It is said in Bacon's Abridgement, that a bill of exceptions ought to be upon some point of law either in admitting or denying evidence, or a challenge, or some matter of law arising on a fact not denied, in which either party is overruled by the court. Vol. 2, Title, BILL OF EXCEPTIONS. In Davies vs. Lowndes, 1 M. & G., 473, where a jury at the time of rendering their verdict for a defendant, delivered a written statement to the effect, "that it was the unanimous verdict that the demandant had not made out her pedigree; that the conusor had entered into, and

was in the actual possession of, the estates devised by the will of T. J. Selby, before and at the time of the levying of the fine in 1784 ; and that he had taken and used, and was then known by, the name of William Selby,'' and the defendant sought to have this state- ment incorporated in a bill of exceptions tendered by the plaintiff. The jury had not been called upon to find on these points. The motion was denied. In support of the motion it was urged that the bill of ex- ceptions should contain a history of the proceedings at the trial, and that the statement was a part of them and the verdict not intelligible without it ; but as an answer to this, it was observed by the court that the proper object of the bill of exceptions is to contain the exceptions made to the directions and rulings of the judge, together with so much of the evidence given at the trial as is necessary to make the exception in- telligible to the court of error and furnish grounds for the allowance or disallowance of the exception ; and that it was unnecessary that the bill of exceptions should contain the statement of the verdict, although it more commonly does so, for the bill may be appended to the judgment roll, which contains the pleadings, the issues joined, the verdict and the judgment, and that upon legal reasoning there was no stronger ground for putting the statement in the bill of excep- tions than in the *postea* immediately before the ver- dict. It was decided in Belton vs. Gibbon, 12 N. J. Law (7 Halstead), 76, that a bill of exceptions can not be taken on the argument and decision of a demurrer to pleadings, and Ewing, C. J., speaking for the Su-

preme Court of New Jersey, said that he did not feel at liberty to look into the document, that a bill of exceptions taken on the argument and decision of a demurrer was a novelty, and unauthorized by their statute, (substantially that of 13 Ed. I, *supra*,) which had never been construed to authorize a bill of exceptions on a demurrer to pleadings, and that an approved instance of the kind was nowhere to be found.

There is nothing in our statutes changing the nature of the office of a bill of exceptions, or its effect as to the record proper. It is true the power given by the act of January 7th, 1853, to this court, after the decision in Carter vs. Bennett, 4 Fla., 283, to review the discretion exercised by the trial court upon motions for new trial, often brings the entire testimony here and extends the scope of our inquiry, but it still only presents matters *in pais*, as to which the record, as it appears upon the minutes of the court, is entirely silent. It is said by Blackstone (Book 3, p. 372) that the bill of exceptions is in the nature of an appeal, examinable not in the court out of which the record issues for the trial at *nisi prius*, but in the next immediate superior court upon a writ of error after judgment given in the court below; and in Gardner vs. Baillie, I. Bos. & Pull., 32, it was held that a bill of exceptions is no part of the record in the court below, and consequently could not be included in the taxation of the costs there; see also Bell vs. Potts, 5 East, 44. It is true that with us the original bill of exceptions does not go to the appellate court, as it did in England (Gardner vs. Baillie, *supra*), but is filed in the trial

court, and a copy thereof duly certified, is sent to the appellate tribunal ; Rabon vs. State, 7 Fla., 9 ; still it is undeniable that the only end to be subserved by a bill of exceptions is a proceeding in an appellate court. It is a record for that purpose, and nothing more is meant to be effected by our statute (sec. 1, p. 454, Mc-Clellan's Digest) when it says that the bill " shall, when signed, become a part of the record of such cause ;" it is not a record for, nor is it the basis of, any proceeding in the trial court. It is not even evidence, on a subsequent trial, in that court, of what a witness, who may have died since the former trial, testified to at that trial. Simmons vs. Spratt, 26 Fla., 449 ; 8 South. Rep., 123. It is usually made up after the ordinary record of the trial in that court has been completed and signed by the judge and the term adjourned. Whether or not a bill of exceptions shall in any case ever be made up is entirely dependent upon the will of the party taking the exceptions, and is solely for his benefit, instead of being a public duty of court officials incident to the trial of causes, as the making of the ordinary record in at least a criminal cause is. It is said (2 Tidd's Prac., 863), that the bill of exceptions is either tacked to the record or not, and that if it be not tacked to the record, it is necessary to set out the whole of the proceedings previous to the trial, but otherwise it begins with the proceedings after issue joined. The practice with us is, to tack the transcript of the bill of exceptions to the transcript of the record proper, and this is the course which has been pursued in the case before us. Assuming, yet not

holding, that the other course is permissible under our statute and rules governing appellate proceedings, it must still be the fact that the bill must "set out the whole of the proceedings previous to the trial," as they are shown by the record, and not otherwise.

Those statements of the bill of exceptions which are relied upon must be regarded as mere prefatory recitals, intended to connect the 'bill with the cause in which it was intended to be used; they are not the subject of any ruling or exceptions as to which the bill was intended to speak, or does speak, and hence, are not matters as to which the bill can be regarded as speaking, or does lawfully speak. They are statements entirely *de hors* the functions of the bill, and can no more be noticed as extending or affecting the statements of the record than if they were not in the bill.

Judging by the only evidence which the law permits us to consider, the plaintiff in error has been tried and found guilty of murder without being personally present at the trial, and this being so, the judgment must be set aside and a new trial be granted.

II. The record entry as to the swearing of the jury is sufficient. Garner vs. State, Fla., 28 Fla.,113; 9 South. Rep. 835, and authorities cited. This is settled in Florida until it shall be changed by statute.

III. It is objected that there is error in the sentence, in that it designates the Duval county jail as the place of execution. In Savage and James vs.

State, 18 Fla., 909, 996, this was held to be error under our statute. Of course it is not such error as would give a new trial, and whether or not it would be sufficient to require a reversal of the judgment and a remanding of the cause for a new sentence, we are not called upon to say. In future proceedings the error can be corrected.

There is nothing in the point that the sentence as rendered and shown by the record is not the judgment of the court. It is palpably the approved formal expression, consideration and judgment of the court, pronouncing the sentence of the law, and reading, as it does: "it is therefore considered by the court that," &c.; it is not a mere recital by the clerk of what the court did. Gray vs. State, 55 Ala., 83.

Judgment reversed and new trial granted.