DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DIMITRIC JERMAINE KOONCE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-1016

[November 12, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Sherri L. Collins, Judge; L.T. Case No. 50-2022-CF-001788-AXXX-MB.

Daniel Eisinger, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellee.

SHAW, J.

This appeal follows the defendant's conviction at trial of four counts of sexual battery on a child and one count of transmission of child pornography. The defendant raises multiple issues on appeal. In broad strokes, the defendant claims the trial court erred in five respects: (1) admitting evidence from outside the time period charged in the amended information; (2) using incorrect jury instructions; (3) admitting irrelevant evidence; (4) questioning one prospective juror outside the defendant's presence; and (5) depriving the defendant of his constitutional right to a twelve-person jury. For the reasons discussed more fully below, we affirm.

## I.   BACKGROUND

The State charged the defendant by an amended information with five counts, all related to sexual abuse of the same victim: (1) sexual battery on a person less than twelve years of age, alleged to have occurred on or between January 1, 2017 and August 28, 2019, based on the defendant's penis penetrating or having union with the victim's mouth; (2) sexual

battery with a child between twelve and eighteen years old, while in a position of familial or custodial authority over the victim, alleged to have occurred between August 29, 2019 and May 31, 2020, based on the defendant's sexual organ penetrating or having union with the victim's mouth; (3) transmission of child pornography; (4) sexual battery with a child between twelve and eighteen years old, while in a position of familial or custodial authority over the victim, alleged to have occurred between August 29, 2019 and May 31, 2020, based on the defendant's sexual organ penetrating or having union with the victim's vagina; and (5) sexual battery with a child between twelve and eighteen years old, while in a position of familial or custodial authority over the victim, alleged to have occurred between August 29, 2019 and May 31, 2020, based on the defendant's finger penetrating the victim's vagina.

The case proceeded to a jury trial. The trial court rejected the defendant's argument that he was entitled to a twelve-person jury under the Sixth and Fourteenth Amendments of the United States Constitution, and empaneled a six-person jury.

At trial, the jury heard evidence of the relationship between the victim and the defendant. The victim was born in August 2007. The defendant was named on the victim's birth certificate and believed he was her father, though the victim's mother testified at trial that he was not the victim's biological father. Instead, the defendant was the biological father of the victim's half-brother.

For the first few years of the children's lives, their mother raised the victim and her half-brother as a single parent and did not seek child support from the defendant. When the victim started kindergarten, the defendant took custody of the children and sought child support from the mother, which she was ordered to pay.

The victim testified that during the first time period when she lived with the defendant (kindergarten through fourth or fifth grade), the defendant forced the victim to perform oral sex on him numerous times. She estimated that it occurred between two or three times per week. The victim and her half-brother then returned to their mother's custody for a year or two.

When the victim was in sixth grade, the defendant regained custody of the children. The victim testified that during this second time period, the defendant resumed sexually abusing her. The victim testified about multiple instances of the defendant forcing her to perform oral sex on him or sticking his finger into her vagina. The victim also described at least

2

two incidents of the defendant forcing her to have vaginal sexual intercourse with him.

On May 31, 2020, after the victim texted her mother that the defendant had come into her room late at night, the mother contacted the Florida Department of Children and Families. Police came to the defendant's house, spoke with the victim, and seized some of the victim's clothing and belongings as evidence.

Forensic evidence revealed male DNA on the victim's underwear and her blue blanket, and stains on the blanket contained sperm cells and seminal fluid. Two semen stains from the victim's underwear were tested and each produced a DNA profile of two individuals. It was 110,050 times more likely that the DNA from the first stain came from the victim and the defendant than from the victim and an unknown person, and it was 261,160 times more likely that the DNA from the second stain came from the victim and the defendant than from the victim and an unknown person. The DNA profiles from the semen stains on the victim's blue blanket were between one quintillion and one nonillion times more likely to have come from the victim and the defendant than from the victim and an unknown person.

In addition to this forensic evidence, law enforcement viewed conversations and a video from the victim's Facebook Messenger account and obtained the defendant's Facebook records. Of particular note is a conversation between the victim and the defendant on Facebook Messenger on May 6, 2020. The conversation contained sexually explicit messages from the defendant and a sexually explicit video showing the defendant putting his fingers in the victim's vagina.

After the State rested its case, the parties discussed jury instructions. The defendant's counsel did not object to the proposed instructions defining each charge's elements.

The defendant took the stand in his defense. He denied doing anything sexually inappropriate with the victim and denied sending the victim the sexually explicit messages and video on Facebook Messenger.

After the defendant rested his case, the trial court read instructions to the jury. Following deliberations, the jury found the defendant guilty as charged on all five counts. The jury also found that the defendant's penis penetrated the victim's mouth, and that the defendant's penis penetrated the victim's vagina.

## II.   STANDARDS OF REVIEW

Several standards govern our review in this appeal. First, the defendant raises several issues that were unpreserved, but contends that we must address those issues, because fundamental error occurred. *See Mansueto v. State,* 148 So. 3d 813, 815 (Fla. 4th DCA 2014) ("Issues not properly raised in the lower tribunal are typically waived on appeal save for unpreserved issues that constitute fundamental error."). Fundamental error is error that "'reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Polls v. State,* 134 So. 3d 1068, 1070 (Fla. 4th DCA 2013) (quoting *State v. Delva,* 575 So. 2d 643, 644–45 (Fla. 1991)). We review issues of unpreserved fundamental error under the de novo standard. *See Holton v. State,* 318 So. 3d 654, 658 (Fla. 1st DCA 2021).

The defendant also argues that the trial court improperly admitted irrelevant evidence. "'The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence.'" *Jeanbart v. State,* 299 So. 3d 3, 7 (Fla. 4th DCA 2020) (quoting *Holloway v. State,* 114 So. 3d 296, 296 (Fla. 4th DCA 2013)).

Finally, the defendant raises two constitutional claims, which are reviewed de novo. *See Davis v. State,* 227 So. 3d 137, 139 (Fla. 4th DCA 2017); *Singletary v. State,* 338 So. 3d 318, 320 (Fla. 3d DCA 2022) ("A claim arguing a denial of due process, a constitutional question, is reviewed de novo.").

## III.   DISCUSSION

We divide our discussion into four parts. First, we explain that no fundamental error occurred at the trial. Second, we explain that the trial court did not abuse its discretion in allowing the victim's mother to testify that she did not seek child support from the defendant. Third, we explain that the defendant was not denied due process when the trial court questioned one juror in the defendant's absence. Finally, we explain that a six-person jury was constitutional in this case.

## A. *No Fundamental Error Occurred at Trial*

The defendant argues that fundamental error occurred as to the conviction for Count I because the trial court allowed testimony about sexual offenses committed against the victim by the defendant prior to the earliest time period charged in the amended information (January 1, 2017). Relatedly, the defendant argues that the prosecution's use of this collateral crime evidence was so extensive and improper that it requires the reversal of all his convictions.

These arguments fail. Extensive evidence existed for the jury to find that the defendant made the victim perform oral sex on him between both January 1, 2017 and August 28, 2019 (Count I), and between August 29, 2019 and May 31, 2020 (Count II). Moreover, the evidence of sexual abuse prior to January 1, 2017 was a rather limited portion of the trial.

Furthermore, section 90.404(2), Florida Statutes (2016), provides that evidence of a defendant's commission of other acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. Thus, no error occurred here. Though the State does not raise this point, we can affirm on this basis under the tipsy coachman doctrine. *See Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) ("[T]he tipsy coachman doctrine … allows an appellate court to affirm a trial court that reaches the right result, but for the wrong reasons[,] so long as there is any basis which would support the judgment in the record.") (cleaned up).

Next, the defendant argues that the trial court committed fundamental error as to Counts IV and V by instructing the jury using the wrong definition of "sexual battery." The trial court used the definition found in the 2022 version of section 794.011, Florida Statutes, rather than the statutory definition at the time of the crimes. While this was an error, it was not fundamental. The convictions could have been obtained without the assistance of the error. The victim's testimony about being penetrated in her "vagina" and other evidence (including a video of the defendant sticking his finger in her vagina and DNA evidence from the victim's underwear) were sufficient to convict the defendant under the "sexual battery" definitions in both versions of section 794.011, Florida Statutes. This is fatal to the defendant's argument that his constitutional rights were violated by the erroneous jury instruction. *See Bartels v. State*, 410 So. 3d 21 (Fla. 4th DCA 2025) (in a child sexual battery case, finding no fundamental error where the trial court used the wrong jury instruction because the evidence was sufficient to convict under either the old or new version of the statute).

The defendant makes the same argument as to Count III.  In the jury instructions, the trial court erroneously used the "child pornography" definition from the 2022 version of section 847.001(3), Florida Statutes, rather than the statutory definition at the time of the crime.  Again, while the trial court erred in instructing the jury with the 2022 definition, the error was not fundamental.  The state presented sufficient evidence to convict the defendant under either definition of "child pornography."  Moreover, the error did not relate to an element in dispute.

*B. The Trial Court Did Not Abuse Its Discretion by Allowing the Victim's Mother to Testify That She Did Not Seek Child Support from the Defendant*

The trial court allowed the victim's mother to testify that she did not seek child support from the defendant.  The defendant contends this testimony was irrelevant.  It was not.  "To be relevant, evidence must prove or disprove a fact in issue." *Frizzle v. State*, 982 So. 2d 1292, 1293 (Fla. 4th DCA 2008) (citing § 90.401, Fla. Stat. (2006); *Coler v. State,* 418 So. 2d 238, 239 (Fla. 1982)).  Here, this testimony was highly relevant to the defendant's defense, which was that the mother and victim fabricated these allegations because the defendant and the victim's mother were involved in a nasty child custody battle and the mother was very unhappy with the defendant for seeking child support.  No error occurred.

*C. The Defendant Was Not Denied Due Process during the Jury Selection Process*

The defendant argues that he was denied due process when he was absent during the trial court's questioning of a prospective juror.  During voir dire, while the jurors had been excused for lunch, a prospective juror requested to speak with the trial court.  The defendant was in a holding cell and not in the courtroom at this time.  The trial court asked the defendant's counsel if he consented to the court speaking with the juror while the defendant was absent, and counsel assented.  Outside the presence of the other jurors, the juror expressed concern with her address being published if she were to be selected for the jury.  Neither attorney participated in this conversation between the prospective juror and the trial court.  Later, both parties agreed to this juror's dismissal for cause (specifically, a medical condition).

No due process violation occurred here.  The defendant's reliance on *Francis v. State*, 413 So. 2d 1175 (Fla. 1982), is misplaced.  In *Francis*, the defendant was absent while the parties exercised their peremptory

challenges, which is a crucial stage of the trial. *Id.* at 1178. Here, the defendant was present for almost the entirety of voir dire, including when all challenges were made. The prospective juror who spoke with the trial court outside the presence of the defendant and the other jurors was dismissed for a cause unrelated to the matter which she had discussed with the trial court. Even if it were error for the trial court to have spoken with the juror outside of the defendant's presence, it was not reversible error.

*D. A Six-Person Jury Was Proper in This Case*

Here, over the defendant's objection, the trial court empaneled a six-person jury. Under the Florida Constitution, "the qualifications and the numbers of jurors, not fewer than six, shall be fixed by law." Fla. Const. art. I, § 22. Florida law provides that "[t]welve persons shall constitute a jury to try all capital cases, and six persons shall constitute a jury to try all other criminal cases." § 913.10, Fla. Stat. (2020). However, the defendant argues that a twelve-person jury was required by the Sixth and Fourteenth Amendments to the United States Constitution. As the defendant acknowledges, binding precedent forecloses this argument. *See Williams v. Florida*, 399 U.S. 78 (1970) (Florida's use of a six-person jury does not violate the Sixth or Fourteenth Amendment); *see also Guzman v. State*, 350 So. 3d 72, 73 (Fla. 4th DCA 2022) (relying on *Williams* to conclude that a six-person jury was constitutional in a case where a defendant was convicted of sexual battery on a child under twelve years old, among other crimes).

In *State v. Hogan*, 451 So. 2d 844 (Fla. 1984), the Florida Supreme Court held that sexual battery on a person less than twelve years of age is not a capital offense for purposes of determining whether the twelve-person jury is required, because the Eighth Amendment to the United States Constitution prohibits a death sentence for capital sexual battery. However, two years ago, the Florida legislature amended section 794.011(2)(a) to authorize the death penalty for capital sexual battery. *See* Ch. 2023-25, § 1 Laws of Fla. (eff. Oct. 1, 2023).

We need not decide now whether *Hogan* should be revisited in light of the 2023 amendment. In this case, the defendant's crimes were committed between January 1, 2017 and May 31, 2020. "[P]ursuant to article X, section 9, of the Florida Constitution, 'the punishment in effect at the time of the crime controls the penalty at sentencing.'" *Morales-Alaffita v. State*, 376 So. 3d 791, 792–93 n.1 (Fla. 2d DCA 2023) (quoting *State v. Reininger*, 254 So. 3d 996, 999 (Fla. 4th DCA 2018)). Thus, we look to the 2020 version of section 794.011(2)(a) when considering whether sexual battery

on a child is a capital offense in this case for purposes of determining the appropriate jury size. Under this analysis, a six-person jury was constitutional. *See Guzman*, 350 So. 3d at 73; *see also Morales-Alaffita*, 376 So. 3d at 792 ("At the time the crimes were committed here, the sexual battery of a child under twelve years of age was not punishable by death. We are bound to follow the existing precedent of the Florida Supreme Court, and as the courts reiterated in both *Guzman* and *Gonzalez,* we have no authority to overrule United States Supreme Court precedent.") (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions.

*Affirmed.*

KUNTZ, C.J., and MAY, J., concur.

*     *     *

**Not final until disposition of timely-filed motion for rehearing.**