399 So.2d 964 (1981)
Henry Perry SIRECI, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 50905.
Supreme Court of Florida.
April 9, 1981.
As Corrected on Denial of Rehearing June 10, 1981.
*966 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender, and Richard B. Greene, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of murder in the first degree and a sentence of death. We have jurisdiction.
The defendant, Sireci, went to a used car lot, entered the office, and discussed buying a car with the victim Poteet, the owner of a car lot. Defendant argues that the purpose of his visit was to take some keys from the *967 rack so that he could come back later and steal an automobile. The state argues that defendant went to the used car lot for the purpose of robbing the owner at that time.
The defendant was armed with a wrench and a knife. A struggle ensued. The victim suffered multiple stab wounds, lacerations, and abrasions. An external examination of the body revealed a total of fifty-five stab and incisive wounds, all located on the chest, back, head, and extremities. The stab wounds evoked massive external and internal hemorrhages which were the cause of death. The neck was slit.
The defendant told his girlfriend, Barbara Perkins, that he was talking to the victim about a car, then he hit the victim in the head with the wrench. When the man turned around, the defendant asked where the money was, but the man wouldn't tell the defendant, so he stabbed the man. The defendant told Perkins that he killed Poteet. He admitted taking the wallet from the victim.
Harvey Woodall, defendant's cellmate when he was arrested in Illinois, testified that the defendant had described the manner in which he killed the victim. According to Woodall's testimony, the defendant hit the victim with a wrench, then a fight ensued in which the windows were broken, and the defendant stabbed the man over sixty times. The defendant stated that he wasn't going to leave any witnesses to testify against him and that he knew the man was dead when he left. The defendant told Woodall he got around $150.00 plus credit cards.
The defendant also described the crime to Bonnie Arnold. According to Arnold, the defendant stated that the car lot owner and he were talking about selling the defendant a car, when the defendant hit the victim with a tire tool. A fight began and the defendant stabbed the victim. The defendant told Arnold that he was going in to steal some car keys and then come back later to steal a car.
The defendant told David Wilson, his brother-in-law, that he killed the victim with a five or six-inch knife and took credit cards from the victim.
The defendant contends that the killing was a spur-of-the-moment act occurring after a fight had begun and that he entered the used car lot without any intent to rob or harm the victim. His only intent was to take keys from the office in order to return, after the office was closed, for a car. Defendant says this negates the element of premeditation.
Premeditation can be shown by circumstantial evidence. Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues. Weaver v. State, 220 So.2d 53 (Fla. 2d DCA), cert. denied, 225 So.2d 913 (1969). Premeditation does not have to be contemplated for any particular period of time before the act, and may occur a moment before the act. Hernandez v. State, 273 So.2d 130 (Fla. 1st DCA) cert. denied, 277 So.2d 287 (1973). Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of his victim is concerned. Larry v. State, 104 So.2d 352 (Fla. 1958). Weighing the evidence in light of these standards it is clear that the premeditation of the defendant has been proved beyond a reasonable doubt.
The defendant stated to witness Perkins, in recounting the incident, that he hit the victim with the lug wrench, and demanded from the victim the location of the victim's money. The victim would not tell him, so the defendant stabbed him. *968 The defendant told witness Perkins that he had looked all over for the money, but couldn't find any, so he took the man's wallet. The evidence shows that the defendant needed money, since he was not working and was preparing to go on a trip. The evidence was also sufficient to sustain a finding by the jury that defendant was guilty of felony murder. There was clearly sufficient, competent evidence by virtue of the circumstances, the physical evidence, and the defendant's own statements, to support the jury's verdict of guilty of murder in the first degree. Every reasonable hypothesis of innocence was excluded.
The defendant questions the admissibility of testimony from his former cellmate, Holtzinger, regarding an alleged attempt by the defendant to have his brother-in-law, Wilson, killed.[1] The defendant says this was an improper reference to a collateral offense. Wilson testified as to various statements made by the defendant which fully implicated him in the crime charged. He also testified that the defendant gave details about the knife and where the homicide took place. The defendant told Wilson where the knife was located and Wilson retrieved the knife at that location and turned it over to the authorities. The defendant told Holtzinger that the purpose of eliminating Wilson and preventing him from testifying was to discredit the testimony of witness Perkins, thereby avoiding a conviction. Evidence that a suspected person in any manner endeavors to evade a threatened prosecution by any ex post facto indication of a desire to evade prosecution is admissible against the accused where the relevance of such evidence is based on consciousness of guilt inferred from such actions. Mackiewicz v. State, 114 So.2d 684 (Fla. 1959), cert. denied, 362 U.S. 965, 80 S.Ct. 883, 4 L.Ed.2d 879 (1960). A defendant's attempt to intimidate a state witness is relevant and admissible. Vaccaro v. State, 152 Fla. 123, 11 So.2d 186 (Fla. 1942); Roberson v. State, 40 Fla. 509, 24 So. 474 (1898).
It is axiomatic that evidence of another crime is admissible if it casts light on the character of the act under investigation by showing either motive, intent, absence of mistake, common scheme, identity, or a system or general pattern of criminality, so that the evidence of such other crime would have a relevant or material bearing upon some essential aspect of the offense being tried. Ashley v. State, 265 So.2d 685 (Fla. 1972); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 103, 4 L.Ed.2d 86 (1959). The test for determining whether a defendant's prior crimes are admissible is relevancy, and, as long as the evidence of other crimes is relevant for any purpose, the fact that it is prejudicial does not make it inadmissible. Ashley v. State, supra.
The defendant contends that he was unduly prejudiced by the state's failure to include the name of Donald Holtzinger on a written witness list until the day of the trial. He argues that the trial court erred in refusing to strike Holtzinger's testimony. The defendant moved to continue the trial on the grounds that he had been given an additional list of five witnesses shortly before the trial and the state had failed to comply with the requirements of Florida Rule of Criminal Procedure 3.220. Compliance with this rule, i.e., furnishing a list of witnesses, does not necessarily have to be in writing.
The state was aware of the existence of this witness approximately four months prior to trial. Within two weeks after the state became aware of the witness, the detective who had the witness's name and the contents of his relevant information was deposed by the defendant's first attorney. The detective, at this deposition, informed the defendant's attorney of the witness Holtzinger, and that Holtzinger had been talking with the defendant about the *969 incident in question. The initial witness list supplied to the defense concluded with the statement, "together with any other persons named in any investigative or laboratory reports or other documents furnished in compliance." Furthermore, Holtzinger's name was number 28 on the praecipe for witness subpoena, which was filed twelve days prior to trial. Additionally, defendant's counsel was made aware of the witness Holtzinger by prior defense counsel one week before trial. Finally, written notice was given to defense counsel two days before Holtzinger's testimony. A comprehensive inquiry, as contemplated by Richardson v. State, 246 So.2d 771 (Fla. 1971), was made by the trial court. It is axiomatic that a motion for continuance is addressed to the sound discretion of the trial judge. Raulerson v. State, 102 So.2d 281 (Fla. 1958). The defendant has failed to show that there was an abuse of the trial judge's discretion and has further failed to show that any prejudice resulted by the failure to include Holtzinger's name in an earlier written witness list.
In Mobley v. State, 327 So.2d 900 (Fla. 3d DCA), cert. denied, 341 So.2d 292 (Fla. 1976), the court held that even though the state failed to provide the defendant with the name of a witness pursuant to a defense request for a typical discovery, the trial court did not abuse its discretion in denying defendant's motions to exclude the witness and in denying defendant's motion for continuance, where the defendant was given an opportunity to speak with the witness and where the name of the witness was listed in at least three places on defendant's arrest report. In Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977), this Court held that the defendant had not been unfairly surprised by the fact that a ballistics expert had been left off the list of witnesses, where defense counsel reasonably should have been aware of the state's proposed proof by reason of information already known to the defendant. See also Floyd v. State, 361 So.2d 802 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1366 (Fla. 1979); Cooper v. State, 356 So.2d 911 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1364 (Fla. 1979).
During the cross-examination of state witness Perkins the defense attempted to impeach her by use of the fact that during a deposition she had refused to answer questions on the advice of her attorney and pursuant to her attorney's objection on the grounds that she may be incriminated. Perkins admitted that this was the content of her deposition. Apparently defendant had information that public defender Bowen had worked out a deal in her behalf so that she would acquire immunity in exchange for her testimony. The defendant says that reversible error was committed because he was restricted in his cross examination of Perkins, so that he could not make inquiry as to the existence of an immunity contract.
However, the record discloses that defendant's counsel questioned her fully and in detail regarding any agreement which was made or promises which were received in return for her testimony. Perkins testified there was no agreement not to prosecute in exchange for her testimony. She was not charged with the commission of any offense in connection with the incident. She stated that she had not been led to believe, or assured, that she could not be prosecuted. On cross-examination she testified that she had not entered into any agreement with the prosecutor in connection with any offense in exchange for her testimony in the case. She knew of no deal worked out in her behalf by public defender Bowen in exchange for her testimony. The trial court clearly indicated defense counsel could attempt to impeach the witness's testimony regarding the fact that there had been no arrangement between her and the state for her testimony at the trial. However, no impeachment testimony was offered.
Wide latitude is permitted on cross-examination in a criminal proceeding, the scope and limitation of which lies within the sound discretion of the trial court and is not subject to review except for a clear abuse *970 of discretion. Mancebo v. State, 350 So.2d 1098 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1217 (Fla. 1978). The defendant has failed to show any abuse of discretion on the part of the trial court.
Detective Nazurchuk testified concerning the interrogation of the defendant shortly after he was arrested. He stated that he read defendant his rights and that "he requested his attorney." The detective stated that the interview was then terminated. The defendant says he was denied due process of law by the introduction of this testimony which was a direct comment upon his exercise of his constitutional right to remain silent. The defendant made incriminating statements to many people, including a confession to his brother-in-law.
Section 40.01(1), Florida Statutes (1977), provides that any expectant mother or mother of a child under fifteen years of age may be exempted from jury duty upon request. The defendant's contention that this statute denies his right to a fair cross-section of the community on his jury is without merit. McArthur v. State, 351 So.2d 972 (Fla. 1977).
The defendant claims that he was denied due process of law by the state's failure to notify him prior to trial of the aggravating circumstances the state intended to prove in the case. This argument is without merit. Menendez v. State, 368 So.2d 1278 (Fla. 1979); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). Section 921.141(5), Florida Statutes (1977), defines the aggravating circumstances that may be considered by both the judge and the jury. This clearly rebuts the defendant's argument that he had no notice of the aggravating circumstances on which the state would rely.
The statutes in some other states specifically require that notice of the aggravating circumstances be given to the defendant prior to trial. The defendant's reliance upon cases from these jurisdictions is misplaced for it is irrelevant what other state statutes require in this regard. Even in the absence of such a provision, the Florida statute is constitutional and has been so held. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Menendez, supra; Spinkellink, supra; State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
The defendant argues that in order for the trial court to have the requisite jurisdiction to impose the death sentence, a listing of the aggravating circumstances which the state intends to rely upon must be contained in the indictment. This argument is also without merit. When one is charged with murder in the first degree, he is well aware of the fact that it is a capital felony punishable by a maximum sentence of death, as provided in section 775.082 and 921.141, Florida Statutes (1977). The indictment charged all the elements of murder in the first degree and the defendant had notice of the aggravating circumstances.
In support of his position defendant has cited Arthur v. State, 351 So.2d 60 (Fla. 4th DCA 1977), which seems to indicate that, before the trial court can impose a mandatory minimum three-year sentence pursuant to section 775.087(2), Florida Statutes (1977), the allegation that defendant carried a fireman must be contained in the indictment. The mandatory minimum three-year sentence pursuant to the above statute is a separate sentence enhancement, which is not contained and for which notice is not provided in the particular statute with which a defendant is charged. Defendant in the case sub judice, being charged with murder in the first degree, is immediately placed on notice that he is charged with a capital felony punishable as provided by statute. Defendant also cites cases regarding the burglary and robbery statutes, arguing that the different degrees of burglary and robbery constitute the application of varying aggravating circumstances, analogous to the aggravating circumstances in a capital felony. This argument is also without merit. Sections 810.02 and 812.13, Florida *971 Statutes (1977), do not charge burglary and robbery with varying sentences depending upon the applicability of certain "aggravating circumstances." These statutes charge burglary and robbery in different degrees, each degree carrying different sentences. A defendant would not be on notice of which degree of burglary or robbery was charged unless the necessary allegations bringing the particular charge into a certain section of the burglary or robbery statute were contained in the information. See Growden v. State, 372 So.2d 930 (Fla. 1979).
Defendant contends that the death sentence was imposed upon defendant on the basis of aggravating circumstances that were not proved beyond a reasonable doubt and were improperly applied. He also says that the trial court improperly failed to consider certain mitigating factors. Findings of a judge are factual matters which should not be disturbed unless there is an absence or lack of substantial competent evidence to support those findings. Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979); Lucas v. State, 376 So.2d 1149 (Fla. 1979).
Defendant argues that the trial judge improperly doubled the aggravating circumstances of robbery and pecuniary gain. He relies upon Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977), where this Court said that pecuniary gain cannot be doubled up with robbery in such a manner that two factors are considered as separate aggravating circumstances. In his findings of fact, the trial judge indicated that he was aware that in evaluating aggravating and mitigating circumstances he must not engage in a mere counting process of "x" number of aggravating circumstances and "x" number of mitigating circumstances, but rather a reasoned judgment. The mere recitation of these two factors does not condemn the death sentence. Hargrave v. State, 366 So.2d 1 (Fla. 1978); Fleming v. State, 374 So.2d 954 (Fla. 1979).
As other aggravating factors, the Court found that defendant's intent in murdering the victim was for the purpose of avoiding arrest; that, at the time he committed the murder, the defendant had been previously convicted of a felony involving violence or threat of violence (robbery); and that the murder was especially heinous, atrocious, and cruel. The trial court found no mitigating circumstances. Even if the trial court improperly considered one or more aggravating factors, such is harmless in view of the fact that there were no mitigating factors and there were present at least one or more aggravating factors which are listed in the statute. Elledge v. State, 346 So.2d 998 (Fla. 1977).
Defendant counters with a contention that there were mitigating factors. He says that the trial court failed to give proper weight to evidence of the defendant's mental or emotional problems. It appears from the evidence that any psychological or emotional disorders of the defendant were, at most, personality disorders. Personality disorders were described as the least serious of all disorders. Defendant is attempting to argue the applicability of the psychological mitigating circumstances merely by virtue of the fact that he discovered that his father was not his real father, and he had problems with his family as a result. Nothing has been presented which would have the effect of requiring this Court to disturb the findings of the judge. See Raulerson v. State, 358 So.2d 826 (Fla.), cert. denied, 439 U.S. 959, 99 S.Ct. 364, 58 L.Ed.2d 352 (1978).
The defendant further argues that the state presented evidence to the jury of a non-statutory aggravating factor: the defendant's lack of remorse. The trial judge did not find "lack of remorse" as an aggravating factor. While lack of remorse cannot constitute an aggravating circumstance, it can be offered to the jury and judge as a factor which goes into the equation of whether or not the crime was specially heinous, atrocious, or cruel. In Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976), the fact that the defendant *972 allegedly stated "I don't feel no different," constituted part of the equation which went into the finding of "heinous, atrocious, and cruel." Similarly, in Hargrave v. State, 366 So.2d 1 (Fla. 1978), the statements of the defendant that he had killed before and it would not bother him to kill again were considered as applicable to a consideration of whether or not the aggravating factor of "heinous, atrocious, and cruel" was present beyond a reasonable doubt. In both of these cases the death sentence was upheld. In the case sub judice the trial court clearly did not consider "lack of remorse" as a separate aggravating factor.
Defendant contends that the Florida statute unconstitutionally limits the consideration of mitigating factors, relying upon Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Lockett indicates that the sentencer cannot be precluded from considering, as mitigating factors, any aspect of defendant's character or record or any circumstances of the offense that the defendant may proffer as a basis for a sentence of less than death. However, the United States Supreme Court also clearly indicated that the trial court may exclude, as irrelevant, any evidence not bearing upon the defendant's character or record, or circumstances of the offense. Florida's death penalty statute comports with Lockett, supra, and has been so interpreted. Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979). Defendant, however, says that he was restricted in the presentation of evidence during the sentencing phase. The evidence which he attempted to introduce allegedly would have pointed to his innocence. This argument is without merit. The same jury heard all the evidence of guilt or innocence during the first phase of defendant's trial. A further repetition of evidence pointing to guilt or innocence in the case sub judice would have been repetitive and pointless in the sentencing phase. The trial judge clearly recognized his duty to consider evidence in mitigation when he said that "all evidence of mitigating circumstances may be considered by the judge or jury." He also recognized his duty to assess, by a process of reasoned judgment, what factual situations required the imposition of death and which could be satisfied by life imprisonment in light of the totality of the circumstances present. The trial judge found no mitigating circumstances to be present. This is not a situation where the judge refused to hear certain evidence of mitigating circumstances.
We have carefully reviewed the record and find no merit in the points raised by defendant for reversal of his conviction or reduction of his sentence.
Finding no reversible error, the judgment and sentence are affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] The incriminating statements made by defendant to his cellmates were not the result of any initiation of law enforcement. The cellmates came to the police after the statements were made. As a result, United States v. Henrv, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); Malone v. State, 390 So.2d 338 (Fla. 1980) are not applicable.