413 So.2d 1175 (1982)
Bobby Marion FRANCIS, Appellant,
v.
STATE of Florida, Appellee.
No. 60809.
Supreme Court of Florida.
April 15, 1982.
*1176 Bennett H. Brummer, Public Defender and Howard K. Blumberg, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for appellant.
Jim Smith, Atty. Gen. and Theda R. James, Asst. Atty. Gen., Miami, for appellee.
ALDERMAN, Justice.
Bobby Marion Francis appeals his conviction for first-degree murder and his sentence of death. Finding that he was denied due process of law by the selection of the jury outside his presence and that this resulted in prejudicial error, we reverse his conviction and remand for a new trial.
Francis was convicted of first-degree murder in 1976. He appealed his conviction and sentence of death to this Court, and we relinquished jurisdiction to the trial court by order entered June 20, 1978, so that Francis could file a Florida Rule of Criminal Procedure 3.850 motion on the ground of ineffective assistance of trial counsel. The trial court agreed with Francis' claim and, on June 11, 1979, granted his motion and ordered a new trial. After denial of his motion for change of venue, the case was retried in Monroe County in August 1979, and Francis was again convicted of first-degree murder and sentenced to death.
Francis was convicted of murdering Titus Walters whose body was found in a bathtub in a Key West home. Walters' hands were bound, and his mouth was taped. He had been shot twice in the head and had been fatally shot in the chest. Powder burns on his body indicated that he had been shot at close range. Several eyewitnesses present during the incident testified that Francis had fired the shots after the victim had pleaded for his life.
Francis argues that his conviction should be reversed and that he should be given a new trial because the selection of the jury during his absence denied him his constitutional right to be present at all stages of the trial.
The voir dire examination of prospective jurors began on August 14 and continued through August 15, 1979. Francis was present during the examination of prospective jurors, but at the commencement of the afternoon session on August 15, defense counsel asked permission for Francis to go to the restroom. Without consulting Francis, defense counsel then, when asked by the court whether he waived Francis' presence for the purposes of jury selection, answered that he did. No peremptory challenges had yet been exercised by either side at this time.[1] The jury selection then proceeded in the courtroom outside Francis' presence. After the names of three jurors had been read, the judge, counsel for both sides, and *1177 the court reporter retired to the jury room to continue the selection process. This was done at the request of counsel because they were crowded around the bench. By this time Francis had returned to the courtroom but was left sitting in the courtroom when the judge and counsel went into the jury room. After the jury was selected, the judge, counsel for both sides, and the court reporter returned to the courtroom, and the jury was sworn. No inquiry of Francis was made by the court as to whether he ratified the jury which was selected in his absence.
During the hearing on his motion for new trial before the trial court, Francis objected to this selection of the jury outside his presence. At this hearing, he testified that he wanted to be present during the jury selection process but that he was told by his counsel that he would not be permitted to accompany the judge, counsel, and court reporter into the jury room. He further stated that he had not consented to his counsel's waiver of his right to be present.
Francis asserts that the exercise of peremptory challenges is an essential part of a trial and was particularly significant here where many of the potential jurors had expressed knowledge of his case and where a number of these prospective jurors actually knew that he had been convicted and sentenced to death previously for the same charge that they might be called upon to consider. He contends that he was not voluntarily absent from the selection process and that because this was a capital case, his counsel's waiver was not binding on him since he neither consented to this waiver beforehand nor acquiesced to it afterward. In fact, he maintains, a defendant cannot waive his right to be present in a capital case.
Francis has the constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his absence. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). See also Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Florida Rule of Criminal Procedure 3.180(a)(4) recognizes the challenging of jurors as one of the essential stages of a criminal trial where a defendant's presence is mandated. This rule expressly provides:
(a) Presence of Defendant. In all prosecutions for crime the defendant shall be present:
... .
(4) At the beginning of the trial during the examination, challenging, impanelling, and swearing of the jury;
... .
This rule contains a proviso though which relates to a defendant's voluntarily absenting himself from the courtroom. Subsection (b) of this rule states:
(b) Defendant Absenting Himself. If the defendant is present at the beginning of the trial and shall thereafter, during the progress of said trial or before the verdict of the jury shall have been returned into court, voluntarily absent himself from the presence of the court without leave of court, or is removed from the presence of the court because of his disruptive conduct during the trial, the trial of the cause or the return of the verdict of the jury in the case shall not thereby be postponed or delayed, but the trial, the submission of said case to the jury for verdict, and the return of the verdict thereon shall proceed in all respects as though the defendant were present in court at all times.
We have held that in a noncapital case where a defendant voluntarily absents himself during his trial, his absence will not be permitted to interrupt the proceedings. This is so because the presence requirement is for his protection, and therefore he can waive it if he chooses voluntarily to absent himself. State v. Melendez, 244 So.2d 137 (Fla. 1971). In Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), the Supreme Court of the United States said that the rule in noncapital cases is that if after trial has begun in his presence, defendant voluntarily absents himself this does not nullify what has been done nor does it prevent the completion of the trial. In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme *1178 Court held that a defendant had lost his right to be present in the courtroom by engaging in conduct so noisy, disorderly, and disruptive that it made it exceedingly difficult or wholly impossible to carry on a trial. Underlying this conclusion is the premise that a defendant cannot take advantage of his own misconduct to vitiate a trial. Henry v. State, 94 Fla. 783, 114 So. 523 (1927).
Because of the factual circumstances underlying Francis' claim, we find it unnecessary in this opinion to distinguish between capital and noncapital cases, and we need not answer the questions of whether a trial may proceed in a capital case where defendant voluntarily absents himself from the courtroom or whether a defendant may otherwise waive his right to be present in a capital case.[2]
Francis was absent during a crucial stage of his trial and his absence was not voluntary. He had been excused by the court momentarily to go to the restroom. After he had returned to the courtroom, his counsel, the prosecutor, the judge, and the court reporter retired to the jury room to exercise Francis' and the State's peremptory challenges. His counsel had told him he could not go with them into the jury room. His counsel had not obtained his express consent to challenge peremptorily the jury in his absence.
In State v. Melendez, which involved a trial for a noncapital offense, we addressed counsel's waiver of defendant's presence during the jury selection process and said that where a defendant has counsel, constructive knowledge of the proceedings may be imputed to defendant but that this doctrine only applied to those cases in which, upon defendant's reappearance at his trial, he acquiesces or ratifies the action taken by his counsel during his absence. In Melendez, we explained that upon Melendez's reappearance, the trial judge carefully questioned him as to his knowledge and understanding of his right to be present, and he freely ratified the actions of his counsel in selecting the jury.
Francis was not questioned as to his understanding of his right to be present during his counsel's exercise of his peremptory challenges. The record does not affirmatively demonstrate that Francis knowingly waived this right or that he acquiesced in his counsel's actions after counsel and judge returned to the courtroom upon selecting a jury. His silence, when his counsel and others retired to the jury room or when they returned after the selection process, did not constitute a waiver of his right. The State has failed to show that Francis made a knowing and intelligent waiver of his right to be present. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
Since we find that the court erred in proceeding with the jury selection process in Francis' absence, we also consider whether this error is harmless. We are not satisfied beyond a reasonable doubt that this error in the particular factual context of this case is harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The exercise of peremptory challenges has been held to be essential to the fairness of a trial by jury and has been described as one of the most important *1179 rights secured to a defendant. Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894); Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). It is an arbitrary and capricious right which must be exercised freely to accomplish its purpose. It permits rejection for real or imagined partiality and is often exercised on the basis of sudden impressions and unaccountable prejudices based only on the bare looks and gestures of another or upon a juror's habits and associations. It is sometimes exercised on grounds normally thought irrelevant to legal proceedings or official action, such as the race, religion, nationality, occupation or affiliations of people summoned for jury duty. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In the present case, we are unable to assess the extent of prejudice, if any, Francis sustained by not being present to consult with his counsel during the time his peremptory challenges were exercised. Accordingly, we conclude that his involuntary absence without waiver by consent or subsequent ratification was reversible error and that Francis is entitled to a new trial.
Francis also challenges his conviction on the basis that the trial court erred in denying his motion to suppress evidence taken from his home and his motion to suppress certain statements made by him. We find no merit to these contentions and find that the evidence taken from his home and his statements are properly admissible evidence.
Francis further contends that the trial court erred in not granting his motion for change of venue. He alleges that prejudicial pretrial publicity pervaded the community in which he was tried and that widespread publicity of his previous conviction and sentence of death in that community for this same murder made it impossible for him to select a fair and impartial jury. Since we reverse and remand for a new trial based upon Francis' absence during a portion of the jury selection process, it is not necessary that we resolve this change of venue issue. We are concerned, however, about the jurors' knowledge through pretrial publicity of Francis' prior conviction and sentence of death. The danger that members of any new jury will know about his two prior convictions and sentences of death for this same murder will be even greater if this case is again retried in Monroe County. The trial court should consider this fact if, upon remand, Francis renews his motion for change of venue.
We also do not reach the merits of Francis' challenges to his sentence of death.
Accordingly, we reverse his conviction and remand for a new trial.
It is so ordered.
SUNDBERG, C.J., and OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS and BOYD, JJ., dissent.
NOTES
[1] The trial court described the procedure that was utilized to select the jury as follows:

[W]e'll start with the first named individual. I'll ask the State if the State accepts. You'll either accept or reject. If you accept, then the defense will have an opportunity to accept or reject. We continue to go down the line giving the State the opportunity first, then the defense until I get to twelve, at which time I'll ask the State if you accept the panel. At that time you may backstrike any that you wish to up to the total limit of peremptory challenges. And then we will continue on until we get twelve again until they are finally accepted by the State, at which time I'll turn over to the defense and they may accept or backstrike as they choose until you both used up either your ten or we have our panel of twelve; okay? There will be one strike per side per alternate; I anticipate two. One strike per alternate. You got two alternates; you got two strikes.
We neither approve nor disapprove this procedure but merely note that it is not a procedure extensively utilized in this State.
[2] We note, however, that in our early case of Lowman v. State, 80 Fla. 18, 85 So. 166 (1920), this Court addressed defendants' claims for new trial on the basis that at different times they were voluntarily absent from the courtroom during their capital trials for a few minutes. Acknowledging the defendants' constitutional right and statutory right to be present, this Court said that defendants' momentary absences from the courtroom were voluntary, and there is nothing to indicate that any harm could have resulted to defendants by their voluntary absences. But see Lovett v. State, 29 Fla. 356, 11 So. 172 (1892).

We note also the following statement in Mulvey v. State, 41 So.2d 156, 158 (Fla. 1949):
It is settled that a statute such as is here involved is for the benefit of the defendant and may be waived by him, especially where the offense charged is less than capital... . We express no opinion as to whether its provisions may be waived in a capital case, for we have no such question before us.