439 So.2d 1372 (1983)
Fredrick HERZOG, Appellant,
v.
STATE of Florida, Appellee.
No. 61513.
Supreme Court of Florida.
September 22, 1983.
Rehearing Denied November 21, 1983.
*1374 Michael D. Gelety, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., and Max Rudmann and Sharon Lee Stedman, Asst. Attys. Gen., West Palm Beach, for appellee.
ADKINS, Justice.
This is an appeal by Fredrick Herzog from his conviction of first-degree murder and from the trial judge's imposition of the death sentence after the jury had recommended life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction, but direct that the death sentence be reduced to a sentence of life imprisonment in accordance with the jury's recommendation.
Although the testimony of two eyewitnesses is somewhat inconsistent, the facts are as follows:
The victim, Ginger Mackert, who was defendant's paramour, shared an apartment with defendant and his two male roommates, Alongi and Carrier. The victim had resided with the three for approximately two months, except for brief intervals when the victim would move out after arguments with the defendant.
On February 8, 1981, the defendant and victim hosted a small party to celebrate their recent engagement. Those attending the party consumed various quantities of alcohol, quaaludes, and marijuana. Later that evening, victim and defendant had an argument that resulted in the dispersal of the party. Those remaining at the apartment were the victim, defendant, Alongi, and Carrier.
The argument ceased when the victim retired to the bedroom and defendant fell asleep on the couch. The victim was apparently heavily intoxicated. Shortly thereafter Carrier and Alongi heard a banging noise, and, being concerned because of her intoxicated and despondent state, broke down the door to find the victim in the bathtub banging her head against the wall. They helped her out, and took her to her bedroom where she was placed in bed and fell asleep. During this whole time, defendant was asleep in the living room.
Sometime later, the victim got up and came out to where defendant was sleeping, and attempted to get a handgun from somewhere underneath him. It is unclear whether she actually acquired possession of the gun. Nevertheless, Carrier intervened and emptied the gun and hid it behind a refrigerator. The victim returned to the bedroom.
Later that evening, the defendant woke up; Carrier related the previous facts to the defendant who demanded the return of the gun; Carrier complied. Thereafter, the defendant went into the bedroom where the victim was, and they engaged in another argument. Carrier and Alongi left the apartment shortly after being told by the defendant to mind their own business. The argument had apparently subsided before their departure.
After one or two hours, Carrier and Alongi returned to the apartment. Although it was quiet at first, the defendant and victim began arguing again; this time they were in the kitchen. Carrier and Alongi, who were in their respective bedrooms, investigated and saw the victim consuming more quaaludes. Although the testimony on this point is inconsistent, the defendant was apparently inducing the victim to take the drugs.
*1375 The defendant and victim next apparently returned to the bedroom. A short while later, Carrier and Alongi joined the defendant in the bedroom. Carrier gagged the victim, and recommended that they take her to her brother's house. Carrier testified that the victim offered no resistance when gagged. After the gag was applied and while the victim was lying on the bed, the defendant and Alongi attempted to smother her with a pillow. Alongi testified that he helped the defendant because the defendant was armed with a gun; however, the evidence on this issue is tenuous. After the suffocation attempt failed, the apparently unconscious victim was dragged into the living room whereupon the defendant, assisted by Alongi, strangled her to death using a telephone cord.
The next morning Herzog, Alongi, and Carrier discussed disposing of the body and shortly thereafter Carrier left for work. Herzog and Alongi then wrapped victim in a garbage bag and placed her in the trunk of Herzog's car. The two men drove to Alligator Alley, drenched the corpse with gasoline, and set it afire. Victim was found smoldering February 10, 1981.
Herzog was arrested, indicted, and found guilty by a jury of first-degree murder. Co-defendant Paul Alongi entered a plea of guilty to the lesser included offense of manslaughter and was placed on five years' probation. Carrier was granted total immunity.
The defendant's first contention is that the trial court erred in conducting critical stages of the trial in his absence. The precise duration of defendant's absence is in dispute. However, the only reasonable inference to be drawn from the record is that the defendant was absent during a defense motion to suppress certain photographs from introduction as evidence for the state. The relevant portion of the transcript is as follows:
Mr. Blackman: If I may, your Honor, I forgot one other thing, and I would like to mention it right now.
The Court: Do you waive the presence of your client? He's gone.
Mr. Blackman: Yes, sir, I waive the presence of my client for this particular motion.
The state has shown me a number of pictures, a load of pictures, some of which may be relevant, but others which I think might be inflammatory.
After the trial court noted the defendant's absence, trial counsel waived defendant's presence and proceeded with the motion. The trial court elected not to rule on the admissibility of the photos at that time, but rather, to rule on the photos individually before they were introduced. Immediately thereafter, the court recessed for the day. There is no indication, nor is it asserted, that the defendant's absence was not voluntary.
In asserting this argument, the defendant places heavy emphasis on our recent decision in Francis v. State, 413 So.2d 1175 (Fla. 1982). In Francis, also a murder case, trial counsel waived the defendant's presence for a portion of the jury selection and told the defendant that he could not go into the jury room where peremptory challenges were being exercised. Id. at 1178. We reversed, holding that the involuntary absence of the defendant, during a crucial stage of a trial for a capital offense, is error notwithstanding the waiver by trial counsel. Id. at 1178-79. We relied on Florida Rule of Criminal Procedure 3.180(a)(4) which recognizes the challenging of jurors as a crucial stage in the trial, thus the defendant's presence is necessary. We also emphasized that the arbitrary nature of peremptory challenges requires the defendant's presence to consult with counsel during the time of exercise. Id. at 1179.
Defendant's reliance on Francis is misplaced. First, Francis involved the involuntary absence of the defendant as contrasted with the voluntary absence in the instant case. Id. at 1178. Secondly, and more importantly, the absence in the case sub judice was not during a crucial stage of the trial as defined by Rule 3.180 or constitutional principles ("where fundamental fairness might be thwarted by his absence"). Francis, 413 So.2d at 1177 (citing Snyder v. *1376 Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).
Hence, the absence of the defendant during the motion was not error irrespective of the waiver by defense counsel.
We are not called upon to, and do not, answer the question of whether a defendant's involuntary absence, during a noncrucial stage of a trial for a capital offense, would be error. Nor is it necessary that we answer the hypothetical question left open in Francis; whether the defendant's voluntary absence, during a crucial stage of a trial for a capital offense, constitutes error. Francis, 413 So.2d at 1178. We continue to note, however, Lowman v. State, 80 Fla. 18, 85 So. 166 (1920).
As his second point of error the defendant contends that certain comments made by the court below, as well as interruptions in cross-examination constitute reversible error. Defendant concedes the lack of contemporaneous objection by him below; however, he urges that such an objection would have proved futile and does not preclude appellate review. Defendant urges that our decision in Thomas v. State, 419 So.2d 634 (Fla. 1982) is controlling. Thomas, however, is inapposite. In that case defense counsel stated his desire to make a motion in response to a statement by the prosecutor. However, the trial court, anticipating what the motion was, overruled it and denied counsel's request to further argue the issue. We held that counsel's compliance with the court directive did not constitute waiver and counsel is not required to "pursue a completely useless course when the judge has announced in advance that it will be fruitless." Id. at 635. (Citing Brown v. State, 206 So.2d 377, 384 (Fla. 1968) (emphasis supplied)). The record in the instant case reveals nothing that should have dissuaded counsel from making a contemporaneous objection.
In the alternative, defendant argues that the comments made by the trial court are of such a nature as to constitute fundamental error and are, hence, reviewable irrespective of the lack of contemporaneous objection.
Our review of the record fails to disclose any remarks that could be deemed "so prejudicial to the rights of an accused that neither rebuke nor retraction could eradicate its evil influence." Grant v. State, 194 So.2d 612, 613 n. 1 (Fla. 1967). Hence, the failure of the defendant to object to the alleged prejudicial comments is fatal and subsequent review by this Court cannot be had. See Maggard v. State, 399 So.2d 973, 976 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981); Ray v. State, 403 So.2d 956, 960 (Fla. 1981); Castor v. State, 365 So.2d 701, 703 (Fla. 1978); Clark v. State, 363 So.2d 331, 333-34 (Fla. 1978).
Even had the record been properly preserved for review, the result in the instant case would be unchanged. The comments made by the trial court cannot be reasonably interpreted as being prejudicial to the defendant, nor did the putative interruptions in cross-examination unnecessarily limit the scope of defense counsel's cross-examination.
Defendant's next point of error involves statements by witnesses concerning the defendant's involvement in illicit drug sales and use of firearms. The majority of this testimony was in direct response to defense counsel's questions on cross-examination and, therefore, defendant cannot be heard to take issue with it on appeal.
One of the statements concerned an incident where the witness knocked on defendant's door and was greeted by a shotgun. This statement was relevant to the general question asked by defense counsel concerning the witness's knowledge of a secret knock to gain access to defendant's apartment. Although this statement was somewhat unresponsive, defense counsel made no motion to have the statement stricken, and therefore, cannot argue the issue for the first time on appeal. § 90.104(1)(a), Fla. Stat. (1981).
The remaining statements were elicited by the state from its witness, Zuffuto, *1377 on direct examination. They concerned a previous threat by the defendant to kill the victim, a previous incident whereby the defendant attempted to induce the victim into a gun "fast-draw" contest, and testimony that Zuffuto had seen the victim with two black eyes.
Defendant urges that this is improper similar fact evidence offered by the state to show propensity or bad character and not relevant to a material issue. The defendant further asserts that the state bears the burden of proof on relevancy when this type of evidence is used.
While it is true that the state has the burden of showing relevancy, this burden only shifts to the state after the defendant has made a proper objection to its introduction. State v. Davis, 290 So.2d 30 (Fla. 1974); Franklin v. State, 229 So.2d 892 (Fla. 3d DCA 1969), cert. denied, 237 So.2d 754 (Fla. 1970). The record fails to indicate any objection by defendant, and he is thereby precluded from arguing this point on appeal.
Even assuming, arguendo, that a proper objection was made, our review of the record indicates that the evidence was relevant on an issue other than propensity or bad character. See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
As his fourth assignment of error, defendant asserts that his taped statement, given to Detective Fantagrassi, was obtained in violation of his fifth amendment right to remain silent, and was improperly introduced as evidence against him.
The putative violation occurred when the defendant, during the Miranda warning, indicated his desire to exercise his right not to answer questions. The questioning officer encouraged him to keep talking, and the defendant eventually agreed to answer the questions. During the entire interview, defendant was represented by counsel who also explained to the defendant that he had an unconditional right to stop the questioning and go home.
At the outset we note that the defendant failed to object to the introduction of the tape as evidence. Defendant urges that this is not fatal to an appeal on this issue. He argues that the trial court's determination of voluntariness, notwithstanding the lack of objection, serves to satisfy the policy reasons for the contemporaneous objection rule and preserves the issue for appellate review. We find this argument to be of no merit. See Wainwright v. Sykes, 433 U.S. 72, 88-89, 97 S.Ct. 2497, 2507-08, 53 L.Ed.2d 594 (1977).
Even had the point been properly preserved, the defendant's argument has no support in the decisional law. Defendant's reliance on Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) is misplaced. The Court in Mosley stated:
If an individual indicates his desire to remain silent, but has an attorney present, there may be some circumstances in which further questioning would be permissible. In the absence of evidence of overbearing, statements then made in the presence of counsel might be free of the compelling influence of the interrogation process and might fairly be construed as a waiver of the privilege for purposes of these statements.
Id. at 101 n. 8, 96 S.Ct. at 325 n. 8 (citing Miranda v. Arizona, 384 U.S. 436, 474 n. 44, 86 S.Ct. 1602, 1627-28 n. 44, 16 L.Ed.2d 694 (1966)).
Our review of the record indicates no evidence of overbearing by the police during the interrogation. The officer very tactfully overcame the defendant's reluctance to answer questions without the slightest indication of overbearing. The defendant answered the questions voluntarily, under the belief that his answers were exculpatory, not because of any coercion on behalf of the interrogator.
Defendant next asserts that his fifth amendment right to remain silent was violated on two occasions: First, when a taped interview, in which defendant indicated his reluctance to talk, was played to the jury, and second, when the prosecutor objected to defense counsel's closing arguments. Defendant *1378 concedes the lack of objection below and further concedes that this lack of objection is fatal to appeal. Simpson v. State, 418 So.2d 984 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983); Clark v. State, 363 So.2d 331 (Fla. 1978). However, defendant invites us to reconsider our position on this issue; an invitation we decline to accept.
Defendant next contends that the evidence adduced at trial was insufficient to sustain a conviction. Defendant attacks the evidentiary sufficiency on two issues, premediation and cause of death.
We find ample evidence in the record to support a jury finding of premeditation. There is evidence that the parties had had an argument on the same day of the homicide, and that the defendant had also beaten the victim that day. In addition thereto, eyewitnesses testified as to the manner of death. After an unsuccessful attempt at smothering the victim, defendant wrapped a telephone wire around her neck and strangled her. See Scott v. State, 411 So.2d 866, 868 (Fla. 1982); Phippen v. State, 389 So.2d 991, 993 (Fla. 1980). There was also testimony that the defendant had previously expressed his intention to kill the victim, and that defendant accused the victim of stealing from him. Further evidence shows that the defendant attempted to cover-up the incident by disposing of the body and making exculpatory statements to authorities. See Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976).
Relying on Wright v. State, 348 So.2d 26 (Fla. 1st DCA), cert. denied, 353 So.2d 679 (Fla. 1977), defendant argues that there was insufficient evidence adduced at trial on the issue of cause of death. His reliance on this case, however, is misplaced. We find sufficient evidence in the record to establish cause of death. The medical examiner, a forensic pathologist, was well within the purview of his expertise and fully substantiated the underlying facts supporting his conclusion on this issue. Further, the cause of death, as determined by the medical examiner, was consistent with the testimony of the two eyewitnesses, and was inconsistent with defendant's own assertions of innocence. Cf. Driggers v. State, 164 So.2d 200, 203 (Fla. 1964) (findings of medical examiner which were not inconsistent with defendant's explanation of how death occurred held insufficient to sustain murder conviction).
In addition to reviewing the specific arguments raised by the defendant, we have also reviewed the record pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that a new trial is not required.
The defendant's final two points concern the imposition of the death penalty. In overruling the jury recommendation of life, the trial court found that four aggravating circumstances were applicable in this case; sections 921.141(5)(b) (previous conviction of felony involving threat of violence), (5)(e) (committed to avoid arrest), (5)(h) (heinous, atrocious or cruel), (5)(i) (cold calculated manner), Florida Statutes (1981).
As to mitigating circumstances, the trial court enumerated the statutory mitigating circumstances and found none of them applicable in the instant case. The court made the specific finding of fact that defendant was the "dominant party during the commission of the crime," thus negating section 921.141(6)(e), Florida Statutes (1981) (that the defendant was under the influence of duress or substantial domination of another person).
As to section 921.141(5)(b), Florida Statutes (1981) (previous conviction of felony involving use or threat of violence to the person), the trial court properly found this aggravating circumstance to be applicable, and it is not argued as error in this appeal.
The trial court, however, misapplied section 921.141(5)(e), Florida Statutes (1981) (crime was committed for purpose of avoiding an arrest or effecting an escape from custody). As we have previously held, this aggravating circumstance is applicable primarily in the situation where defendant kills a law enforcement officer in an effort *1379 to avoid arrest or effect escape. It may also be applicable when the factfinder determines that the dominant motive of the murder was for the elimination of witnesses. White v. State, 403 So.2d 331, 338 (Fla. 1981) (citing Riley v. State, 366 So.2d 19 (Fla. 1978), cert. denied, ___ U.S. ___, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982)).
The trial court lists two facts in support of his holding that this factor is applicable. First, that "defendant transported the victim's body to a desolate area ... where he set fire to [it]." Second, "when interviewed by the police two months after the murder, [defendant] professed that on the night in question he went to sleep and awoke the next morning to find that she departed, thereby misleading the police authorities and avoiding detection."
The court below cites two cases supporting its position. Welty v. State, 402 So.2d 1159 (Fla. 1981); Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979). These cases, however, are inapposite. In Washington, the defendant was involved in a spree of robberies in which he summarily killed the victims. One of these victims was stabbed to death, and later buried in a shallow grave. Defendant argued that his surrender to the police and confession negated the section (5)(e) aggravating factor. We declined to accept this argument, pointing to the disposal of the body as one fact diminishing the credibility of defendant's argument. Id. at 666.
Hence, this evidence was used by this Court not as an element supporting the section (5)(e) aggravating factor, but as evidence of the lack of credibility of defendant's argument.
In Welty, the defendant went to the victim's apartment with the intent to steal various items. Upon entering the victim's apartment to commit the larceny, defendant strangled the victim and set fire to his bed. Hence, the homicide was committed for the purpose of avoiding arrest for the crimes of burglary and larceny. Had Welty's victim's life been spared, he would have been able to identify the perpetrator who had spent several hours with him earlier that evening. Id. at 1161. Therefore, that case fell within the latter category, which was articulated in White (that the dominant motive was to eliminate witnesses).
The state argues that the defendant killed the victim with the intent of avoiding arrest for the crime of aggravated battery, which occurred sometime previous to the homicide. This argument may have merit if the facts supported a finding that a previous aggravated battery had occurred, and that the motive for the homicide was to avoid arrest. However, the trial court did not so find, nor do we find evidence in the record to support such a conclusion.
As to section 921.141(5)(h), Florida Statutes (1981) (crime was especialy heinous, atrocious, or cruel), we hold that this factor is not applicable in the instant case. The trial court articulated several facts in support of this finding. First, "that the defendant beat the victim, suffocated her with a pillow and then strangled her with a telephone cord. [Second, that defendant] stashed her body in a laundry room until it could be disposed of and, [third, that defendant] has never shown remorse (having steadfastly denied his involvement)." In support of this third finding, the trial court cites Sireci v. State, 399 So.2d 964, 971 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). In Sireci, the defendant stabbed his victim fifty-five times during a robbery, and later expressly indicated his lack of remorse to a witness. We held that this lack of remorse "can be offered to the jury and judge as a factor which goes into the equation of whether or not the crime was specially heinous, atrocious, or cruel." Id. at 971. We were referring here to an affirmative statement by the defendant indicating his lack of remorse. A mere denial of his commission of the offense charged, however, would not be relevant on this issue. Cf. Sullivan v. State, 303 So.2d 632, 638 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976) (defendant stated, "I don't feel no different" when referring to the murder he committed.); Hargrave v. State, 366 So.2d 1, *1380 5 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979) (defendant stated that he had killed before and it would not bother him to kill again). See also McCampbell v. State, 421 So.2d 1072, 1075 (Fla. 1982).
As to the trial court's finding that the disposal of the body is a factor that can be considered in determining heinousness, we have held that this evidence is irrelevant on this issue. Simmons v. State, 419 So.2d 316, 319 (Fla. 1982); Blair v. State, 406 So.2d 1103 (Fla. 1981); Halliwell v. State, 323 So.2d 557, 561 (Fla. 1975).
As to the manner by which death was imposed, we find that in this factual context the evidence is insufficient, standing alone, to justify the application of the section (5)(h) aggravating factor. We have previously stated that this factor is applicable "where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." Tedder v. State, 322 So.2d 908, 910 n. 3 (Fla. 1975) (quoting State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)).
In the instant case, there is evidence that the victim was under heavy influence of methaqualone previous to her death. She had apparently inflicted self injury, and it is unclear what amount of punishment was inflicted by the defendant's own hand prior to the time of the murderous acts. Further, both eyewitnesses stated that the victim was unconscious. The actual period of unconsciousness is unclear. However, she was in this state at least during the period of time between the pillow incident and the act that caused her death. It can also be reasonably inferred from the record that she was semi-conscious during the whole incident as there is evidence that the victim offered no resistance, nor did she make any statements during the attack. Cf. McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978); Gardner v. State, 313 So.2d 675 (Fla. 1975), vacated, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Compared with the cases cited and others on this subject we find that the section 5(h) aggravating factor is without factual justification. See also Middleton v. State, 426 So.2d 548 (Fla. 1982); Simmons v. State, 419 So.2d 316 (Fla. 1982).
The last aggravating circumstance found by the trial court, section 921.141(5)(i), Florida Statutes (1981), "ordinarily applies in those murders which are characterized as executions or contract murders, although that description is not intended to be all-inclusive." McCray v. State, 416 So.2d 804, 807 (Fla. 1982) (citing Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982)). The trial court found the facts supporting this factor as follows: "[T]he killing was the consummation of prior threats and arguments based on defendant's belief that the victim had previously taken some of his money or drugs." This finding speaks to the issue of premeditation, however, it is not sufficient to establish the requirement that the murder be "cold, calculated ... and without any pretense of moral or legal justification." Combs v. State, 403 So.2d at 421; see also Mann v. State, 420 So.2d 578, 580-81 (Fla. 1982) (10-year-old girl abducted, skull fractured, cut and stabbed several times, not sufficient to meet section (5)(i) requirement).
Therefore, there was only one aggravating circumstance properly found applicable by the court below. That being defendant's prior convictions for robbery and assault.
The trial court properly found that no statutory mitigating circumstances existed; *1381 however, there is no indication in the sentencing order that the court considered nonstatutory mitigating circumstances. We find evidence in the record that the jury could have considered in finding nonstatutory circumstances. (E.g., 1) the heated argument between the victim and defendant which culminated in defendant's decision to kill the victim, 2) the domestic relationship that existed prior to the murder, and 3) the disposition of codefendants' cases. McCampbell v. State, 421 So.2d 1072, 1075-76 (Fla. 1982)).
We must again reiterate that a jury recommendation is to receive great weight, and, before overruling the jury, the trial court must find that the facts "suggesting a sentence of death should be [so] clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975); see also Barfield v. State, 402 So.2d 377 (Fla. 1981).
We have reviewed the series of cases where trial courts have overruled the jury recommendations and been affirmed on appeal. See e.g., Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982); McCrae v. State, 395 So.2d 1145 (Fla. 1980); White v. State, 403 So.2d 331 (Fla. 1981); Johnson v. State, 393 So.2d 1069 (Fla. 1980); Hoy v. State, 353 So.2d 826 (Fla. 1977); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976), Dobbert v. State, 328 So.2d 433 (Fla. 1976), aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Gardner v. State, 313 So.2d 675 (Fla. 1975); Sawyer v. State, 313 So.2d 680 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). We find the facts in these cases to be distinguishable from the case at bar.
Further, we have compared this case with cases involving similar facts and find that a life sentence is consistent with these decisions. See e.g., Blair v. State, 406 So.2d 1103 (Fla. 1981); Chambers v. State, 339 So.2d 204 (Fla. 1976).
Incidentally, there is no evidence in the record that the jury was misled, nor did the trial court find that the jury made its recommendation based on an emotional appeal of defense counsel. Further, there is no indication that the trial court based his decision on new information, unavailable to the jury at sentencing, that would justify his divergence from the jury recommendation. Cf. White, 403 So.2d at 339-40.
Accordingly, we affirm the defendant's conviction for first-degree murder. However, in light of the jury recommendation, we reverse the sentence and remand the cause to the trial court with instructions to impose a sentence of life imprisonment without possibility of parole for twenty-five years.
It is so ordered.
ALDERMAN, C.J., and OVERTON, McDONALD and EHRLICH, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
I concur with that portion of the Court's decision that affirms the conviction of murder in the first degree. I dissent, however, from that portion of the decision which orders a reduced penalty of life imprisonment. Consistency in the application of the capital felony sentencing law requires that the trial court's determination on the matter of sentence be sustained.
There were several aggravating circumstances properly found by the trial court. The court found that the offender had previously been convicted of felonies involving the use or threat of violence to human beings, citing two previous convictions for assault and one for robbery.
The court found that the appellant committed the murder for the purpose of avoiding or preventing arrest. I agree with the majority that this finding is not supported by evidence that appellant tried to cover up *1382 evidence of the murder. Covering up evidence of a murder does not establish that the murder itself was committed for the purpose of avoiding arrest or detection for criminal activity. The evidence showed, however, that appellant's apartment was a center for the distribution of illegal drugs. On the night of the murder, the victim began loudly and angrily shouting and screaming at appellant in a manner that might have drawn attention to the apartment and resulted in police investigation. The killing was appellant's method of silencing her to prevent his detection and arrest as a drug dealer.
The court found that the murder was especially heinous, atrocious, or cruel. The evidence showed that first appellant severely beat the victim, then tried to suffocate her, and finally strangled her with a telephone cord. These actions fully satisfy the requirements for application of this aggravating circumstance. The evidence also showed that appellant forced the victim to ingest large quantities of a powerful (and illegal) sedative. This took away her ability to resist his attacks and, far from mitigating the heinousness, in my view adds to it. The method of killing was strangulation supplemented by beating, suffocation, and poisoning.
The court found that the appellant murdered the young woman in a cold, calculated manner without any pretense of moral or legal justification. When the victim began shouting and screaming in an uncontrollable manner, appellant's two roommates suggested that they remove her from the apartment and take her to her brother's home. This would have solved the noise problem they were so worried about. It was appellant alone who rejected that solution and calmly announced that he preferred to kill her. He made this decision and terminated her life just as he might have performed any other normal routine function.
The court was correct to overrule the jury recommendation of life imprisonment since there was no reasonable basis for it. The murder was committed calmly and not in an emotional outburst. The relationship between the parties was not shown to have had an emotional impact on appellant at the time of the murder.
The disposition of the charges against appellant's accomplices does not properly provide any mitigation under the circumstances here. I do not believe that judicial or prosecutorial outcomes regarding accomplices should be treated as matters in mitigation. See Malloy v. State, 382 So.2d 1190, 1193 (Fla. 1979) (Boyd, J., dissenting in part). However, to the extent that an accomplice's lesser punishment is relevant to mitigation, it is only so where the accomplice is equally or more culpable in the matter than the defendant. See, e.g., Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Salvatore v. State, 366 So.2d 745 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978); Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977); Messer v. State, 330 So.2d 137 (Fla. 1976); Slater v. State, 316 So.2d 539 (Fla. 1975).
Since there was no conceivably reasonable basis for the jury to have found statutory or nonstatutory mitigating circumstances, the judge was correct to override their recommendation. Since a death sentence is the appropriate penalty under the law, I dissent.